# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
## _TALLAHASSEE_ DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

_THIRD AMENDED COMPLAINT_

OUTGOING LEGAL MAIL
PROVIDED TO TAYLOR C.I. FOR
MAILING ON

_1-17-2018,_ ~~OL~~ _Rv_
DATE (MAILROOM-MAIN UNIT) OFFICER INT.

_PERRY T. LAPUMA_,
Inmate # _086188_.
(Enter full name of Plaintiff)

_JURY TRIAL DEMANDED_

vs.

CASE NO: _4:16-cv-00799-WS-CAS_
(To be assigned by Clerk)

_ANA BUCARELLI, M.D., C.H.O.,_
_C. KENDRICK, A.R.N.P.,_
_MELANIE KEY, NURSE,_
_RICHARD LAUBAUGH, C.H.O.,_
_SHANNON VARNES, WARDEN._

_CORIZON HEALTH SERVICES INC.,_
_CENTURION OF FLORIDA, INC.,_
_DAVID McCALLUM, WARDEN_
_EBONY O. HARVEY, HSC_
_TOM REIMERS R.M.D._

(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

### ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

_MQ_

Filed JAN 18 '18 USDc Fln4PN0230

_1 OF 25_

## I.   PLAINTIFF:

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:   Perry Thomas LaPuma
Inmate Number      #086188
Prison or Jail:       Taylor Corr. Inst.
Mailing address:    8501 Hampton Springs Rd.
                     Perry, FL.
                          32348

## II.   DEFENDANT(S):

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address.  Do the same for <u>**every**</u> Defendant:

(1)   Defendant's name:   ANA Bucarelli
      Official position:   M.D. Chief Health Officer
      Employed at:       Taylor Corr. Inst.
      Mailing address:   8501 Hampton Springs RD.
                         Perry, FL. 32348   Sued in individual Capacity

(2)   Defendant's name:   C. Kendrick
      Official position:   A.R.N.P.
      Employed at:       Taylor Corr. Inst.
      Mailing address:   8501 Hampton Springs Rd.
                         Perry, FL. 32348   sued in individual capacity

(3)   Defendant's name:   Melanie Key
      Official position:   Nurse
      Employed at:       Taylor Corr. Inst.
      Mailing address:   8501 Hampton Springs Rd.
                         Perry, FL. 32348   sued in individual capacity

## ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS

- CONTINUATION - (2a + b)

2

(4) Defendant's Name: Richard Laubaugh
Official position: M.D. Chief Health Officer
Employed at Taylor Correctional Institution
Mailing address: 8501 Hampton Springs Rd.
Perry, FL. 32348

Sued in individual capacity

(5) Defendant's Name: Shannon Varnes
Official position: Warden
Employed at: Taylor Correctional Institution
Mailing address: 8501 Hampton Springs Rd.
Perry, FL. 32348

Sued in individual and official capacities

(6) Defendant's Name: Corizon Health Services, Inc.
Official position: Health Provider, Agent
Employed at: Taylor Correctional Institution
Mailing address: 8501 Hampton Springs Rd.
Perry, FL. 32348

Sued in official capacity

(7) Defendant's Name: Centurion of Florida, Inc.
Official position: Health Provider, Agent
Employed at: Taylor Correctional Institution
Mailing address: 8501 Hampton Springs Rd.
Perry, FL. 32348

Sued in official capacity

2.a

- CONTINUATION -

(8) Defendant's Name: David McCallum
Official position: Warden
Employed at: Taylor Correctional Institution
Mailing address: 8501 Hampton Springs Rd.
Perry, Fl. 32348

Sued in official and individual capacities

(9) Defendant's Name: Ebony O. Harvey II SC
Official position: Regional Medical Director
Employed at: Office of Secretary D.O.C.
Mailing address: 501 South Calhoun St.
Tallahassee, Fl. 32399

Sued in official and Individual capacities

(10) Defendant's Name: Tom Reimers
Official position: Health Services Director
Employed at: Florida Department of Corrections
Mailing address: 501 South Calhoun St.
Tallahassee, Fl. 32399

Sued in official and Individual capacities

2.b

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV.   PREVIOUS LAWSUITS

NOTE:  FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.   Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes( ✓ )          No(  )

1.   Parties to previous action:
(a)   Plaintiff(s): _Perry T. LaPuma_
(b)   Defendant(s): _Fla. Dept. of Corr. and Corizon Hs. Inc._
2.   Name of judge: _Parker_          Case #: _14-CA-0661_
3.   County and judicial circuit: _Taylor County, Third Judicial Cir._
4.   Approximate filing date: _2014_
5.   If not still pending, date of dismissal: _2016_
6.   Reason for dismissal: _Failed to provide Expert_
7.   Facts and claims of case: _Failed to diagnose and treat pancreatitis, emergency treatment and blood pressure_
   **(Attach additional pages as necessary to list state court cases.)**

B.   Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes(  )          No( ✓ )

1.   Parties to previous action:
a.   Plaintiff(s): _____
b.   Defendant(s): _____
2.   District and judicial division: _____
3.   Name of judge: _____          Case #: _____
4.   Approximate filing date: _____
5.   If not still pending, date of dismissal: _____
6.   Reason for dismissal: _____

3

7.   Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.   Have you initiated other actions (*besides those listed above in Questions (A) and (B))* in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( ✓ )                    No( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.   Parties to previous action:
     a.   Plaintiff(s): _Perry T. LaPuma_
     b.   Defendant(s): _Dr. Vizcarra_
2.   District and judicial division: _Northern District, Tall._
3.   Name of judge: _Robert Hinkle_   Case #: _4:00cv48 RH/wcs_
4.   Approximate filing date: _1999_
5.   If not still pending, date of dismissal: _2003_
6.   Reason for dismissal: _Lost at bench trial_
7.   Facts and claims of case: _1st + 8th Amendment: Dr. Vizcarra retaliated for grievances. Failed physical + emotional injuries._
     **(Attach additional pages as necessary to list cases.)**
     ~ continuation - (4 a)

D.   Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes( )                    No( ✓ )

1.   Parties to previous action:
     a.   Plaintiff(s): _____
     b.   Defendant(s): _____
2.   District and judicial division: _____
3.   Name of judge: _____   Case Docket # _____
4.   Approximate filing date: _____   Dismissal date: _____
5.   Reason for dismissal: _____

4

1. Parties to previous action:
   a. Plaintiff   Perry T. LaPlume
   b. Defendant(s)   Dr. Lee and Nurse Collins

2. District and judicial division: N.D. Tall.
3. Name of Judge: Maurice M. Paul
4. Approximately filing date: 2000
5. Reason for dismissal: Voluntary dismissal
6. Facts and claims of case: Nurse Collins caused serious injury to Plaintiff's ear with ruptured ear drum, causing severe infections that were not treated adequately.

6.    Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list cases.)**

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  <u>Do not make any legal arguments or cite to any cases or statutes.</u>  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

Preliminary Statement

This is a civil rights action filed by Perry T. LaPuma, a state prisoner, for damages and injunctive relief under 42 U.S.C. § 1983, alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution and the right to grieve medical issues without retaliation in violation of the First Amendment to the Constitution.

1. On or about February 5th, 2011, Plaintiff declared a medical emergency, complaining of severe abdominal and back pain, while incarcerated at, Taylor Correctional Institution's Annex;

2. Plaintiff was escorted by a femal officer to his medical emergency who remained with him throughout his physical assessment by Nurse Couch and Best;

3. Nurse Couch refused to implement abdominal pain protocol because it was the weekend, who had a policy that no inmate was to declare a medical emergency on the weekend unless the inmate was bleeding to death or could not walk;

4. Also, before Nurse Couch examined Plaintiff,

5

she (and Beat) attempted to coerce him into sign-
ing a refusal for medical care. They did this while
explaining their policy above and by threatening him
with a D.R.; Plaintiff refused to sign it;

5. After being threatened by Nurse Couch + Beat
for several minutes, Nurse Couch grudgingly preformed
the physical examination of Plaintiff, stating, that
he 'only' had a back problem;

6. When Plaintiff tried correcting this obvious
false assessment of his medical emergency, by
telling Couch that he was suffering from seven
abdominal pain and nausea; Couch mocked the
Plaintiff and said, 'No' you have back pain and
that's what I'm writing in your medical file;

7. Plaintiff then asked Couch for some pain
medication, she gave him four pills;

8. When no follow up Doctor's referral was provided
for Plaintiff's medical emergency above, Plaintiff wrote
an inmate request to the Health Service Administra-
tor Ms. Simcox inquiring about it on March 3, 2011.
Ms. Simcox in her response indicated that Couch
did not feel it was a medical emergency, so she
did not ask for one;

9. On March 14th, 2011, Plaintiff again wrote a re-
quest to Ms. Simcox, complaining of abdominal and
back pain and needing to be evaluated by a
Doctor. Her response was that I was seen by
A.R.N.P. Lightfoot, but Ms. Lightfoot only
evaluated Plaintiff for blood pressure medication;

10. On April 25th, 2011, Plaintiff filed a medical

grievance #1104-224-038, in reference to the above mentioned medical emergency and Ms. Lightfoot and other staff refusing to address it;

11. On or about April 29th, 2011, Plaintiff was seen by A.R.N.P. Lightfoot for two month old complaint of blood in his stool and constant pain in his abdomen and back, sever at times. Ms. Lightfoot was suppose to order blood tests and an ultrasound of Plaintiff's abdomen according to Dr. Pichardo CHO, but failed to do so in retaliation to the grievance filed against her, Couch and Beat above;

12. Plaintiff continued to use sick call and filed written inmate requests for medical attention. F.D.O.C. employees and agents refused to appreciate Plaintiff's worsening condition and need for immediate diagnostic determination of his pains source;

13. On or about July 8th, 2011, Plaintiff sent Ms. Simcox an inmate request and asked her if he was still scheduled for the ultrasound of his internal organs? Ms. Simcox's reply, 'there's nothing scheduled'. Ms. Lightfoot never did order it;

14. On or about August 28th, 2011, Plaintiff filed medical grievance #1109-224-004 with the Warden at Taylor c.i.. In this grievance, Plaintiff pointed out that Dr. Pichard c.Ho. had verified on 5/6/11 that Ms. Lightfoot was to order the ultrasound of Plaintiff's

7

abdomen and allergic reaction to blood pressure medication and that Defendant Bucarelli had told Plaintiff to continue to take the blood pressure medication.

15. On or about September 16th, 2011, Defendant Bucarelli responded to grievance #1109-224-004, stating the abdominal ultrasound had to be resent. There's no record of this and is assumed to be a false statement. Further, Bucarelli gave another false statement when she said there's no documentation of adverse reaction to blood pressure medication;

16. Plaintiff's appeal to the aforementioned grievance was denied, appeal grievance #11-6-303(4);

17. On or about September 9th, 2011, A.R.N.P. Mary Beth Pliskin requested an ultrasound of Plaintiff's abdomen;

18. On or about September 23, 2011, some seven months later Plaintiff was sent to Lake Butler, Regional Medical Center, where an ultrasound of his abdomen was preformed and revealed, several echogenic structures within the gallbladder lumen, which may represent sludge balls verses NON-SHOWING SMALL GALLSTONES.

19. On or about October 27th, 2011, Plaintiff consulted with Defendant Bucarelli who refused to elaborate on the structures

8.

in Plaintiff's gallbladder. Plaintiff then re-
quested to be evaluated by an outside
gastro- specialist to determine if his
gallbladder was the cause of his seven
pain in his abdomen and back. Defendant
Bucarelli refused to refer the Plaintiff de-
spite his worsening condition and chronic
pain;

20. In November and December 2011, Plain-
tiff filed formal grievances #1111-224-090,
#11-6-38782 and #11-6-346886 for his
condition above;

21. On February 12th, 2012, Plaintiff
sent an inmate request to Ms. Simcox H.S.A,
for an outside gastro consult. Her response
was, "No treatment was offered because it
was felt that any was needed";

22. On or about February 22nd, 2012, Plaintiff
filed another formal grievance #1202-224-055
with the Warden at Taylor C.I. requesting
an outside specialist consult with a gastro-
enteroenterologist for his serious abdomen
condition and to interpret the ultrasound
results above;

23. The above grievance was 'approved' on
March 1, 2012 but neither Lightfoot nor
Defendant Bucarelli complied with the di-
rective of the approved grievance #1202-224-
055. IT was their way of getting back
at Plaintiff for writing grievances against
them;

24. Plaintiff continued to suffer from abdominal and back pain and adverse re- actions from the blood pressure medication 'Metoprolol'. Plaintiff continued to make known his serious medical concerns about to F.D.O.C. staff and/or medical staff by 'ALL' available means. Through sick call, writing requests and writing grievances for many more months, but Ms. Lightfoot, Simcox and/or Defendant Bucanelli con- tinued to treat Plaintiff with malice and refused to put in the request for the previously approve Gastro-consult of his abdomen or provide any meaningful medical care;

25. Finally, on or about August 13th, 2012, Plaintiff was seen by a 'new A.R.N.P. Ms. Patricia N. Kalu during a sick call visit where he explained his serious ab- dominal problems to her. Ms. Kalu then asked Plaintiff if he wanted to have an ultrasound of his abdomen? Plaintiff said, 'yes'. A consultation Form was provided by Ms. Kalu to sign and Plaintiff signed it;

26. On or about October 19th, 2012, Plaintiff was transported from Taylor C.I. to Regional Medical Center, Lake Butler, Fla. and was seen by Dr. Geerken gastroenterologist M.D. who recommended a colonoscopy;

27. On or about December 6th, 2012 Plaintiff was transported from Taylor C.I. to R.M.C., Lake Butler, FL., where his colonoscopy was preformed by Dr. Geerken M.D.. Dr. Geerken viewed gallstones in Plaintiff's gallbladder and confirmed that these stones were the cause of Plaintiff's pain and suffering in his abdomen and back areas, etc., and that he would discuss treatment options at a later date,

28. On or about December 26th, 2012, during 8:00 P.M. count at Taylor C.I. Annex, Plaintiff became severly ill with sever pain in his abdomen and began vomiting violently, Plaintiff had to get his roommate and other inmates to help him declare a medical emergency because he was to weak and ill. After Plaintiff's cell door was rolled he made it to the officer's station and notified the femal officer of his condition and she called in the medical emergency to the Annex Clinic and asked for a nurse and wheelchair,

29. After the nurse arrived he helped me into the wheelchair; but as soon as the housing sargeant arrived, he ordered Plaintiff out of the wheelchair and to walk to the medical clinic, about ¼ mile away. Plaintiff walked doubled over in pain to the clinic;

30. Upon arriving at the clinic, the nurces examined the Plaintiff determining he needed to go to outside hospital, Doctors Memorial Hospital

11.

Perry, Fl., as a medical emergency.

31. After arriving at Doctor Memorial Hospital, staff ran blood test of Plaintiff and determined he needed specialist care that could only be provided at Memorial Hospital at Jacksonville, Fl.. The sgt. who transported Plaintiff to Doctors Memorial now sought authorization to transport Plaintiff to Memorial Hospital by calling the Officer in charge at Taylor c.i. (The Captain) by using his radio. IT was decided between them that the Sgt. and Co2 would transport Plaintiff by D.O.C. Van instead of by helicopter as suggested by medical staff at Doctors Memorial Hospital;

32. Plaintiff arrived at Memorial Hospital Jacksonville, Fl. at approximately midnight, December 27th, 2012;

33. Memorial Hospital staff preformed test and/or x-rays and discovered that the gallstones that were previously discovered in Plaintiffs gallbladder were the cause of Plaintiffs life threatening condition. The gastro-specialist offered no hope of survival and told Plaintiff he could try removing the gallbladder but could not remove the gallstone from the bile duct;

34. Emergency surgery was preformed on December 28th, 2012, removing the gall

bladder. Plaintiff remained in this life-threatening condition for (14) days for a total of (18) days at Memorial Hospital with an additional (10) days at N.F. R.C. Regional Medical Center, Lake Butler, FC.

35. While in critical life threatening condition after surgery Plaintiffs condition began to decline even further. Plaintiff discovered he was being injected with "Metopnolol" in his IV-pick-line because medical staff at Taylor C.I refused or failed to provide accurate medical records that reflect Plaintiffs sever allergic reactions to the medication. Dr. Geerken immediately ordered hospital staff to stop the metopnolo blood pressure medication as Plaintiffs white blood count jumped 10,000.00 to over 20,000.00.

36. After Plaintiff was in stable condition the doctors called it a mirde Plaintiff lived at all;

37. Dr. Gaurang Shah M.D. Gastroentero-logist was in charge of Plaintiffs 'Emergency Follow up medical care and treatment' which included, follow up gastro-consultations every (6) six months, medication (creon-12) to treat Chronic pancretitis and special diet. Dr. Shah started Plaintiff on his creon-12 medication and special diet before he left N.F.R.C. RMC.;

13.

38. The prior paragraph's #1-#37 shows a pattern of conduct by Defendant Bucanelli that proves her acts and/or omissions were the cause of Plaintiff's injuries where she continued to make false representations concerning his serious medical needs of his abdomen condition and adverse reactions to blood pressure medication (metoprolol) for a prolong period of almost (2) two years. Defendant Bucanelli, falsely represented the Plaintiff where it came to providing diagnostic tests (ultrasound) of his abdomen. Dr. Bucanelli CHO, falsely represented the Plaintiff in concern of providing him with an outside gastro-consult that his condition required;

39. Defendant Bucanelli's refusal to provide Plaintiff with an ultrasound of his abdomen and an outside gastro-consult, delayed a diagnoses and treatment for over 14 months that caused unnecessary and sever injury of the Plaintiff;

40. According to John Hopkins Medical Handbook (1992) at page #184; "An ultrasound is used to detect gallstones and sometimes can provide the doctor with an idea of how sever the pancretitis is. When gallstones are found, surgery is usually needed to remove them. When they are removed depends on how sever the pancretitis is. If it is mild, the gallstones often can

be removed within a week or so. In more
seven cases, the patient may wait a month
or more, until he improves, before the
stones are removed";

41. Had it not been for Defendant
Bucarelli's denial and/or excessive delay
of medical care and treatment mentioned
above, the gallstones found in Plaintiff's
gallbladder could have been removed with-
out the removal of his gallbladder and
unnecessary pain and sufferings and other
complications before and after surgery;

42. On or about February 4th, 2013,
Plaintiff was returned to Taylor C.I., Dr.
Gaurang Shah, M.D. gastroenterologist R.M.C.
Lake Butter, FL., had started Plaintiff
on his pancreas medication (creon-12) and
his special diet for his Chronic pancretitis
before he returned to Taylor C.I. on
2-4-2013 and ordered follow-up gastro-
consultations ever (6) six months;

43. To date, none of the Health Providers
at Taylor C.I. (Defendants) have provided
Plaintiff with his necessary medication (creon-
12) that was prescribed and ordered by
Dr. G. Shah mentioned above. Even though
follow-up consultations continued until
February 5th, 2014, each time Dr. Shah
prescribed and/or ordered the medication
it was denied. Defendant Bucarelli had
an obligation and duty to provide Plaintiff

With, 'Access To Emergency Services and Care', that required 'followup Consultations and Treatment in order to effectively care for emergency medical condition.

44. The last time that Plaintiff was seen by Dr. Shah M.D. for his chronic pancreatitis was on February 5th, 2014. Defendant Bucanelli and Corizon Health Services, Inc., abruptly stopped any further consultations with Dr. Shah when he pressured them to provide Plaintiff with medication (Creon-12) to treat his pancretitis. They denied Plaintiff's Creon-12 and any further consultations with gastro.

45. On or about August 26th, 2013, Plaintiff filed formal grievance #1308-218-073 with the Warden of Taylor C.I. David McCallum;

46. On or about 9-6-13, Defendant McCallum denied formal grievance #1308-218-073, the response stating that appropriate treatment for Plaintiff's condition is the responsibility of health staff and that Plaintiff had not accessed sick call to address any complaints;

47. On September 18th, 2013 Plaintiff appealed the denial of grievance #1308-218-073 to the Secretary Fla. Dept. of Corr. grie. No.: # 13-6-31105. The office the Secretary's response on 12-19-13, stated they could not corroborate Plaintiff's allegations and that it was the responsibility

16.

of the Chief Health Officer to determine the appropriate treatment regimen for the condition Plaintiff is experiencing. This includes med-prescriptions.

48. On June 10th, 2015, Plaintiff filed formal grie. # 1506-218-041 with the Warden at Taylor C.I.. The grie. stated Plaintiff was being denied his outside followups gastro-consults and treatment. That he is suffering serious stomach problems and a recent ultrasound revealed spots on his kidneys. That Dr. Lopez had denied him because of cost, Defendant Corizon's policy.

49. On June 29th, 2015, Defendant Varnes denied Plaintiff's grievance # 1506-218-041 even though it was pointed out it is his statutory duty to medical care once prescribed.

50. On July 5th, 2015, appealed the above grie. # 1506-218-041 to the Secretary Dept. of Corr.. The medical Director Defendant Ebony O. Harvey HSC answered and denied appeal grie. # 15-6-23919 on or about Aug. 12th, 2015. For NON-medical reasons. The Fla. Dept. of Corr. has a policy of outsourcing its health-care responsibilities to private contractors to save money on inmates healthcare costs. Pursuant to this policy FDOC entered into a contract with Corizon and/or Centurion, who condons or encourages the denial of inmates serious medical in order to reduce costs. Defendant Harvey has denied 'ALL' of Plaintiff's appeal grievances from October 13th, 2011. thru August 12th, 2015 for Plaintiff's serious medical condition Pancreatitis causing injuries etc.. See grievances, # 11-6-30514; 12-6-27762 # 13-6-31105 and # 15-6-23919.

17.

51. Med. griev. #1606-218-053 Filed on 6-21-16 states that Defendant Kendrick N.P. refused to renew Plaintiff's special diet-pass and prescription medication for chronic pancretitis creon-12 pills that had been prescribed by Plaintiff's Doctor Shah gastroenterologist after being transported from Doctor's Memorial Hospital to Memorial Hospital, Jacksonville, Fl. For a medical emergency. This was explained to Nurse Kendrick but she did not care and treated Plaintiff as a nuisance;

52. The response to the above grievance stated that Plaintiff's medical concerns were addressed by the provider, that referrals to the specialty clinic is done at the discretion of the provider; grievance denied;

53. Plaintiff appealed the denial of grie. #1606-218-053 to the Secretary of the D.O.C. The grievance #16-6-32238 appeal was answered by Health services Director Tom Reimers who indicated Plaintiff was being monitored in the Chronic clinic and last seen on 7/19/16. Plaintiff is being monitored in the Chronic clinic for high bloodpressure not pancretitis; grie. denied;

54. Defendant Kendrick decision to deny Plaintiff his medication and followup consultations is because of Centurion of Floridas policy or custom restricting transportation of inmates to hospitals and/or expensive medication because of cost;

55. On January 22nd, 2017, Plaintiff filed another formal medical grievance #1701-218-091 for the Continual Tortious Acts by the health care providers at Taylor C.I., Defendant Centurion and/or their employees Defendant Melanie Key who refused to provide Plaintiff, "Access To Emergency Services and Care" for chronic pancreitis, who also refused Plaintiff "Follow up Consultations and Treatment" with his outside gastroenterologist (Dr. Shah) that his emergency condition requires. This grievance was denied by Defendant Laubaugh and Defendant Varnes on February 10th, 2017;

56. On February 11th, 2017, Plaintiff filed an appeal to grievance #1701-218-091 to the Secretary D.O.C. which was also denied on September 5th, 2017 for Non-Medical reasons at #17-6-07432;

57. Despite exhausting all available administrative remedies, the defendants in this cause of action are still intentionally interfering with Plaintiff's treatment that was prescribed and/or ordered by Dr. Gaurang Shah M.D. gastroenterologist, which they know is a direct violation of Fla. Statutory Law under, "Access To Emergency Services and Care" and/or a violation of the United States Constitution, Eighth Amendment violation under Cruel and Unusual Punishment. Plaintiff is still

suffering abdomen and back pain, but
now in addition, partial paralysis
with constant numbness and weakness
in both legs for several months;

VI. STATEMENT OF CLAIMS:

58. The failure or refusal of De-
fendant Bucarelli to provide adequate
medical care and treatment for his
serious medical need, continuous ab-
dominal and back pain, an ultrasound
of Plaintiff's adomen, access to outside
gastroenterologist that his particular con-
dition requires, "access to emergency services
and care" followup consultations and treatment
with gastro-specialist to treat chronic pan-
chetetis, constitutes deliberate indifference to
the Plaintiff's serious medical needs in viola-
tion of the Eighth Amendment To The United
States Constitution and Continual tontious
Acts under Florida's statute s. 768.28 and
s. 395.1041 F.S.," Access To emergency Services
and care";

59. The failure or refusal of defendant
Harvey to provide adequate medical care
and treatment for Plaintiff's continuous
abominal and back pain, ultrasound, access
to outside specialist, that his condition
required, "access to emergency services and
care and "Followup consultation(s) and

20.

treatment prescribed and/or ordered by
outside emergency medical staff(specialist)
to adequately treat pancreatitis constitutes
deliberate indifference to the Plaintiff's serious
medical needs in violation of the Eighth
Amendment To The United States Cons-
titution and continual tortious Act(s)
under Florida's statute section 268.28
F.S. and section 395.1041 F.S. under,
"Access To Emergency Services and Care";

60. The failure or continued refusal
of defendant Corizon and Centurion to
provide Plaintiff with adequate medical
care and treatment that was prescribed
by outside specialist, emergency medical
staff and Dr. Shah, for chronic pancreatitis,
constitutes deliberate indifference to the
Plaintiff's serious medical need(s) in viola-
tion of the Eighth Amendment To The
United States Constitution and contin-
ual tortious Acts under Florida's statute
section's 268.28 and s. 395.1041 F.S.'Access
to Emergency Services and Care";

61. The failure or refusal of defendants
Kendrick, Key and Lanbaugh to provide
followup consultations and treatment
prescribed and/or ordered by emergency
staff and/or outside specialist(s) Dr. Shah
denied Plaintiff, "Access To Emergency Services
and Care" under Florida's Statute s. 395.1041
Fla. Stat. (2013) constitutes deliberate

21.

indifference to the Plaintiff's serious
medical needs in violation of The Eighth
Amendment to the United States
Constitution;

62. Defendant <u>Varnes</u> and <u>McCellum's</u>
failure or refusal to provide "Access To
Emergency Services and Care" under Florida's
Statute section 395.1041 Fla. Stat. for,
"Followup Consultation(s) and Treatment"
for Plaintiff's serious medical need(s)
(Chronic pancretitis) that was prescribed
by outside medical staff (specialist)
and/or Dr. Shah, constitutes deliberate
indifference to Plaintiff's serious medical
needs in violation of The Eighth Amendment
to the United States Constitution;

63. The failure or refusal of defendant
<u>Reimers</u> (Regional Service Director) to provide
adequate medical care and treatment for
Plaintiff's serious medical needs and/or "Access
to Emergency Services and Care" under Florida's
Statute section 395.1041 Fla. Stat. for "Followup
Consultation(s) and Treatment for chronic
Pancretitis that was prescribed and/or ordered
by outside hospital staff (specialist) that
his condition requires, constitutes deliberate
indifference to Plaintiff's serious medical needs
in violation of the Eighth Amendment to
The United States Constitution.

Relief Requested:

22.

WHEREFORE, Plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. Defendant Centurion, Varnes and Regional Medical and/or Service Director(s), in failing to provide adequate medical care and treatment for the Plaintiffs serious medical needs and the continual tortious acts in violation of his rights under the Eighth Amendment to the United States Constitution and constitutes a direct denial of "Access To Emergency Services and Care" for Followup Consultations and Treatment under section § 395.1041 Fla. Stat.;

B. Issue an injunction ordering defendant Centurion, Varnes and/or Regional Medical and/or Service Director(s) Ebony O. Harvey HSC or Tom Reimers, or their agents to:

1. Immediately arrange Followup Consultation(s) with Plaintiff's treating physician (Dr. Shah) a gastroenterologist for reevaluation and treatment for chronic pancreatitis and/or the recent partial paralysis suffering numbness and weakness in both legs the past few months;

2. Immediately arrange for the Plaintiff's serious medical need for treatment previously prescribed by Dr. Shah as mentioned in the four corners of this complaint,

23.

3. Carry out without delay the followup Consultation(s) and Treatment prescribed by Dr. Shah to treat Plaintiff's chronic pancretitis adequately by outside specialist.

c. Award Compensatory damages in the following Amount:

1. $1,300,000.00 against defendant Bucarelli for the physical and emotional injuries as a result from her refusal and/or failure to provide adequate medical care that Plaintiff's condition requires.

2. $650,000.00 jointly and severally against defendant's Kendrick, Key and Laubaugh for the physical and emotional injuries resulting from their failure to provide adequate medical care and treatment to the Plaintiff.

3. $500,000.00 jointly and severally against defendant's McCallum and Vannes for the physical and emotional injuries resulting from their failure to provide adequate medical care and treatment to the Plaintiff.

4. $750,000.00 jointly and severally against Corizon, and Centurion for the physical and emotional injuries resulting from their failure or denial of adequate medical care and treatment to the Plaintiff.

5. $1,000,000.00 jointly and severally against defendant Harvey and Reimens for the physical and emotional injuries resulting from their failure to provide adequate medical care to the Plaintiff.

24.

D. Award punitive damages in the follow-
ing amount:
1. $1,000,000.00 against defendant Bucarelli.
2. $1,000,000.00 against defendant Harvey.
3. $500,000.00 each against defendant
Corizon and Centurion.
4 $300,000.00 each against defendant
Kendrick, Key and Laubaugh.
E. Grant such other relief as it may appear
that Plaintiff is entitled.

I DECLARE UNDER PENALTY OF PERJURY
THAT THE FOREGOING STATEMENTS OF FACTS,
INCLUDING ALL CONTINUATION PAGES ARE
TRUE AND CORRECT.

JANUARY 17th, 2018    Perry T. LaPuma

I declare (or certify, verify, or affirm un-
der penalty of perjury that this complaint was
delivered to prison officials for mailing on
the 17th day of January   2018.

Perry T. LaPuma #086188
Perry T. LaPuma
Taylor Correctional Inst.
8501 Hampton Springs Rd.
Perry, Florida 32348

OUTGOING LEGAL MAIL
PROVIDED TO TAYLOR C.I. FOR
MAILING ON
1-17-2018,
DATE (MAILROOM-MAIN UNIT) OFFICER INT.

25.

Perry T. La Puma #086188
Taylor Correctional Institution
8501 Hampton Springs Rd.
Perry, FL. 32348

CHECKED DEC 18 2018



LEGAL MAIL

United States District Court, N.D.
Office of Clerk
111 North Adams Street, Suite 322
Tallahassee, Florida 32301-7717